Paul E. Merrill and Virginia S. Merrill v. Commissioner.
Merrill v. Commissioner
Docket No. 7044-65.
United States Tax Court
T.C. Memo 1967-198; 1967 Tax Ct. Memo LEXIS 63; 26 T.C.M. (CCH) 975; T.C.M. (RIA) 67198; October 12, 1967
*63 Frederick A. Johnson and Robert F. Preti, for the petitioners. Robert B. Dugan, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in income tax for the years 1961, 1962, and 1963 in the amounts of $17,474.68, $19,925.68, and $32,805.27, respectively. Because of certain concessions by petitioners, only one issue remains for decision. Are petitioners entitled to deductions for amounts claimed to have been paid as bonuses to employees? Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners resided in Portland, Maine, at the time of filing their petition herein. They filed joint income tax returns for the years in question on the cash basis with the district director of internal revenue, Augusta, Maine. Any reference to "petitioner" shall be to Paul, Virginia being a party to the proceeding herein solely by reason of having filed a joint return with Paul. Petitioner is the owner of a sole proprietorship known as Merrill Transport Co. and has his principal office in Portland, Maine. Merrill Transport is engaged in the trucking business as a contract *64 carrier, handling petroleum products, primarily within the State of Maine. In 1955, petitioner instituted an informal unannounced policy of presenting bonuses to employees who had satisfactorily completed 10 years of service with the company. During the period from 1955 through 1960, thirty such bonuses were distributed. Five such bonuses were distributed in 1961, five in 1962, ten in 1963, and seven in 1964. Only the bonuses distributed in 1961 through 1963 are at issue herein. Petitioner's employees with 10 years' service also received other cash bonuses aggregating from $900 to $1,100 exclusive of the 10-year bonuses. During all years, the procedure for distributing the 10-year bonuses was the same. Some time in December, around Christmas, the employees who were to receive the bonuses would all be asked to come to petitioner's office. When they were all assembled, petitioner would ask them to come into his office. The employees were then told that, because of their faithful completion of 10 years' service, they were each to receive a $6,500 bonus. Each employee was handed a check, varying in amount from $5,000 to $5,200, depending on the amount of taxes withheld. After some *65 discussion of the bonuses, petitioner told the employees of an investment he though might interest them. The investment, during the years in question, consisted of a loan of the amount of the bonus check to Merrill Industries, Inc., or to Maine Lumber Co., Inc., corporations wholly owned and controlled by petitioner. The terms of the loan were as follows: $ … 19 . AFTER DATE, I promise to pay to… of…, the Sum of… Dollars ($ ) within sixty days upon his attaining the age of sixty (60) years of age if he is still then in my employ, or upon his attaining sixty-five (65) years of age if not in my employ, or to his estate within sixty days after Payee's death, or upon the sale of Merrill Transport Co. by me, excluding incorporation for my personal benefit, or upon my death, whichever comes first, or at such time as may be otherwise determined by Paul E. Merrill or [Merrill Industries, Inc. or Maine Lumber Co., Inc.]. This obligation shall not be negotiable, transferable, assignable or subject to attachment by any creditors. This obligation shall bear interest payable annually by said Maker at a rate to be determined by the Maker, except in no case will the rate of interest *66 be lower than that prevailing and paid by the savings banks in the City of Portland; and said obligation shall bear interest only for those years that the Payee is still in my employ. Payment is to be made in a lump sum, by a series of partial payments, or as otherwise determined by Paul E. Merrill or [name of company issuing the note], but in no event to exceed more than ten years. [Merrill Industries, Inc. or Maine Lumber Co., Inc.] Signed Value Received. By President In describing the investment, petitioner emphasized the growth of the companies involved. The employees were not furnished with financial information such as balance sheets, profit and loss statements, or other specifics as to the condition of the companies, but, because of their long association with petitioner, they were familiar with the operations of the companies. Before leaving petitioner's office, every employee endorsed his check in exchange for a note in the form set forth above. No employee ever refused to relinquish his check in exchange for the note. Merrill Industries, Inc. was the borrower and signatory-maker of the notes in 1961, while Maine Lumber Co., Inc. was the borrower and signatory *67 in 1962 and 1963. These two corporations were the principal borrowers and signatories in the other years as well. The employees receiving the 10-year bonus in 1961, 1962, and 1963 had annual earnings averaging $6,000 to $8,000. All of such recipients except three owned their own homes. Of the seventeen who owned homes, thirteen had mortgages on their homes. All but two of the recipients had one or more children, one of them having seven. The average number of children was 3.2 per recipient. Although petitioner asked the recipients of the bonuses not to discuss them with fellow employees, rumors about the bonus leaked out. Until the actual receipt of the bonus, however, none of the employees knew the precise nature or amount of the bonus. As of December 31, 1961, the financial statement of Merrill Industries, Inc. reflected an earned surplus of $120,760 and a net profit for the year of $16,359. The financial statements of Maine Lumber Co., Inc. reflected the following: Earned surplus
Net profit
or (deficit)
or (loss)
Sept. 30, 1961
[86,592)
[61,557)
Sept. 30, 1962
(84,680)
1,912
Sept. 30, 1963
(74,803)
9,897
The employees were not represented *68 by a union. Respondent disallowed the deductions of the bonuses claimed by petitioner except to the extent of the income taxes withheld from the bonuses. Ultimate Findings of Fact The checks issued by petitioner during the years in question were received unconditionally by the employee-recipients and constituted payment of 10-year bonuses during such years. Opinion Respondent asks us to find that the real facts herein are not what they purport to be. Thus, although petitioner and two of his employees testified that each recipient was free to use his bonus check as he pleased, respondent asks us to hold that, in point of fact, it was intended and contemplated by all concerned that each employee should leave the office with a note from a corporation wholly owned and controlled by petitioner and that consequently the note, and not the check, constituted the bonus. Moreover, he asks us to find that each note was valueless and thus did not give rise to a deductible business expense. He does not otherwise question the deductibility of the bonuses, e.g., that they constituted unreasonable compensation. Petitioner contends that, upon receiving the bonus checks, the recipients *69 of the bonuses were free to leave petitioner's office and that they were not coerced into accepting the investment in the form of notes offered by petitioner. The fact that employees reloan cash bonuses to, or for the benefit of, their employers is in and of itself not fatal. The essential question is whether they take such action of their own free choice or as a result of an overriding compulsion. Obviously, in the type of situation involved herein, each case turns upon its own particular circumstances and an ultimate factual determination by the trial judge upon the basis of his evaluation of all the testimony and other evidence. For this reason, each case is sui generis and prior decisions cited by the parties are of little, if any, precedential value. Petitioner herein was clearly treading on dangerous ground in following the pattern of handling the 10-year bonuses as established by the record herein. Unquestionably, the employees were influenced to some degree by petitioner's investment suggestion. On the other hand, their long association with petitioner and their apparent satisfaction with the manner in which they had been treated as employees over the years generated a *70 loyalty to, and faith in, petitioner, which also could have influenced their decision. Petitioner testified categorically that each employee who received a bonus check was free to retain it if he so chose. Two recipients unqualifiedly corroborated this testimony and testified that they voluntarily decided to exchange the check for a note. Nothing in the demeanor of these witnesses impaired the consistency of their testimony both on direct and cross-examination. Respondent's counsel informed the Court prior to the opening of the trial that he intended to call two employees as his witnesses but at the conclusion of petitioner's case stated,"We had called two witnesses here, but I don't believe they can add anything in view of the testimony that has already been presented to the Court." Thus, petitioner's case stands uncontradicted. As a general proposition, uncontradicted testimony should not be disregarded except where it is so inherently or highly improbable or manifestly unreasonable as to be unbelievable. (C.A. 5, 1950), affirming a Memorandum Opinion of this Court, certiorari denied ; *71 (C.A. 9, 1949), affirming ; ; . We do not think mere suspicion on the part of respondent, understandable as it may appear to be, is sufficient to justify a departure from the general rule. Certainly, on the facts and circumstances herein(including the conceded fact that the checks were treated as income to the recipients and income tax withheld therefrom), it cannot be said that such suspicion achieves that degree of improbability or unreasonableness which an exception to the general rule requires. In view of our holding, we need not decide whether, if the notes, rather than the checks, had constituted the bonuses, the notes would have been sufficiently capable of valuation to constitute a deductible payment by petitioner in an ascertainable amount. Cf. ; , affirmed per curiam (C.A. 5, 1950). Because of petitioners' concessions on other issues, Decision will be entered under Rule 50.